**BRAUDIS et al.  v.  HELFRICH.**

No. 43763.

Supreme Court of Missouri.

Division No. 1.

March 8, 1954.

N. Murry Edwards, Ninian M. Edwards, St. Louis, for defendant-appellant.

Flynn & Parker, Joseph L. Badaracco, St. Louis, for respondents.

COIL, Commissioner.

Carl Helfrich, defendant below, has appealed from a judgment for $10,000 entered on plaintiffs-respondents' verdict in their action to recover damages for breach of contract. Defendant contends that no valid, enforceable contract was proved.

Defendant adduced no evidence. Plaintiffs' evidence to support the contract alleged in the petition was, such that the jury reasonably could have found these facts; that on February 17, 1950, a severe coal shortage existed; that plaintiff James Braudis (in the coal business) telephoned defendant (also a coal dealer) and stated that he, Braudis, knew where there was a large quantity of stoker coal available and who controlled its sale; that Braudis offered to disclose this information to defendant if defendant would promise to pay him (Braudis) 50¢ per ton for each ton of coal defendant purchased or moved from this source of supply; that the defendant accepted the offer and promised to pay as therein outlined; that Braudis thereupon disclosed to defendant the information; that thereafter, by the middle of March 1950, defendant had removed 20,000 tons of coal from the source of supply disclosed to him by Braudis and informed Braudis that he (defendant) had removed all the coal which he desired to remove; that Braudis demanded payment from defendant in accordance with their contract and defendant refused to pay.

Defendant initially contends that the purported "oral contract was void for want of mutuality; that both parties were not bound by the alleged contract; that defendant did not agree to buy any coal; that there was no consideration for the alleged oral contract * * * the alleged contract * * * was unilateral and unenforceable."

Defendant's contentions are based upon the fallacious premise that the alleged contract was one whereby plaintiffs agreed to sell, and defendant agreed to buy, coal, and was wholly executory. It is at once apparent that the contract was not one for the sale of coal, that plaintiffs had execut-

ed the contract, and that defendant's act of removing coal from the source of supply disclosed brought about the condition upon which payment was due. Defendant's cited cases, relevant if his basic premise were sound, are thus inapplicable. No purpose will be served by discussing them.

The agreement entered into between Braudis and defendant constituted a bilateral contract, supported by the respective considerations of mutual promises. Braudis agreed to furnish information which apparently might be beneficial to defendant. Defendant promised (an apparently possible benefit to Braudis) to pay for such information, on the condition that he remove coal from the stated source of supply. These mutual promises constituted sufficient consideration for the bilateral contract. Williston on Contracts, Rev.Ed., Vol. 1, § 103F, p. 347; Restatement, Contracts, § 77, p. 86. The terms of the contract were definite. Both parties were bound, Braudis, to disclose the information as promised; defendant, to pay 50¢ for each ton of coal he removed. Each party could enforce performance of the other's promise.

Defendant does not suggest that the contract was illegal because of its subject matter or the relationship of the parties. There is no claim made, nor does it appear, that: the information Braudis disclosed to defendant was furnished in breach of trust or in violation of any other fiduciary relation; the information was such that Braudis was obligated to disclose it because of any relationship he bore to defendant; the disclosure was in violation of law or against public policy. Under these circumstances, the contract proved was valid and enforceable unless it may be that a promise to disclose information or, as in the instant case, its disclosure, cannot constitute a sufficient consideration for a promise to pay. There is no reason which compels or suggests such a conclusion.

The closest case on its facts which we have found is the early case of Reed v.

Golden, 28 Kan. 632, 42 Am.Rep. 180. There, plaintiff agreed to and did disclose the location of a certain "oil spring" as consideration for defendant's promise to pay $150 for such information on condition that the ground on which the "oil spring" was located could be purchased. Plaintiff proved, inter alia, that the ground could be purchased. The court held that the furnishing of the information was a sufficient consideration to support defendant's promise to pay, and said, 28 Kan. at page 633: "One who knows the locality of oil wells, of mines or of other valuable properties, may sell his knowledge to any one willing to buy, and the disclosure of the locality of such properties is a sufficient consideration for the purchaser's promise to pay."

We have found no case holding that the furnishing of information is not a sufficient consideration to support a promise to pay therefor, provided that the facts in a particular case do not make the contract illegal or cause an otherwise sufficient consideration to be no consideration, as in Keller v. American Chain Co., 255 N.Y. 94, 174 N.E. 74. In that case plaintiff agreed to and did impart to defendant information that the freight rates being paid by defendant were excessive, in return for defendant's promise to pay for such information one third of defendant's savings (as a result of the information) for 20 years. The court held that disclosure by a plaintiff of such information was ordinarily a sufficient consideration for a defendant's promise to pay; but denied recovery because plaintiff's relationship to defendant was such that plaintiff was bound to have voluntarily disclosed such information in the regular course of business. See also 12 Am.Jur., Contracts, § 189, p. 692; Annotation, 34 A.L.R. 1537.

Defendant also contends that the contract was within the Statute of Frauds and thus unenforceable. Defendant did not plead the Statute of Frauds and made no objection to testimony offered to support the contract on the ground that the alleged contract was oral. State ex rel. Place v. Bland, 353, Mo. 639, 651, 183 S.W.2d 878, 886[8, 9]; Kansas City Stock Yards Co. v. A. Reich & Sons, Mo.Sup., 250 S.W.2d 692, 699[11–13]. He may not now raise the question. But of the contention on its merits, this was not a contract for the sale of goods, wares, or merchandise, and therefore not within Section 432.020 RSMo 1949, V.A.M.S. And the contract was one which could be performed within one year from its date consistently with its terms and thus not within Section 432.010. Carlin v. Bacon, 322 Mo. 435, 442, 16 S.W.2d 46, 48[2, 3], 69 A.L.R. 1; May v. Moore, 99 Mo.App. 27, 29, 72 S.W. 476.

In his reply brief, defendant contends that the evidence failed to show that he removed any coal from the source disclosed by Braudis. Our prior statement as to the facts which the jury reasonably could have found is perhaps sufficient to dispose of this contention. However, in view of defendant's insistence, we point to these questions and answers from the direct examination of plaintiff Braudis.

"Q. Do you know whether or not, Mr. Helfrich, after your conversation with him on or about February 17, 1950, removed any coal from that pile? A. Yes, I do.

"Q. Do you know how much approximately he removed? A. It was approximately 20,000 ton. * * *

"Q. With respect to this particular transaction when was your next conversation [with defendant]? A. The next time I took this matter up with him was after I knew he was through with the operation and it was approximately the middle of March * * * 1950. * * *

"Q. What was the conversation at that time? A. Well, I asked him if he was through. He said 'Yes'. And I asked him when we were going to settle up on the commission and his only reply to that question was that he didn't owe me anything, because he hadn't made any such arrangement with me."

■ Clearly, the foregoing constituted substantial evidence from which the jury reasonably could find that defendant removed 20,000 tons of coal from the disclosed source. The fact that, on cross-examination, defendant's counsel elicited the statements that Braudis hadn't seen anyone remove coal from the pile and was not present when any trucks removed coal therefrom did not destroy the probative value of the quoted testimony.

The judgment is affirmed.

VAN OSDOL and LOZIER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.